COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-078-CV
 
  
ADVANCED 
AESTHETICS, INC.                                               APPELLANT
  
V.
  
CREATIVE 
BEAUTY                                                                  APPELLEE
INNOVATIONS, 
INC.
 
 
------------
 
FROM 
THE 352ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Advanced Aesthetics, Inc. (Advanced) appeals from the trial court’s denial of 
a motion to set aside a default judgment entered in favor of Appellee Creative 
Beauty Innovations, Inc. (CBI).  We affirm.
BACKGROUND
        On 
September 16, 2003, the parties entered into a Settlement Agreement that 
resolved all claims between them in a lawsuit pending in a United States 
District Court in Utah.  Under the Settlement Agreement, Advanced agreed to 
pay CBI six equal installments of $10,416.67 each, with the first payment 
becoming due immediately upon execution of the Settlement Agreement, and the 
remaining five payments being due on the first day of each month for five 
consecutive months beginning October 1, 2003.  The Settlement Agreement 
provided that if any payment was not made when due, CBI could give written 
notice of such default to Advanced and its counsel, and if such default was not 
cured within ten days CBI could sue to enforce the Settlement Agreement in the 
federal or state courts of the State of Texas, and that Texas law shall govern 
such proceedings.  Upon execution of the Settlement Agreement, the United 
States District Court dismissed the Utah litigation.
        Communicating 
through their counsel,[2] the parties almost 
immediately disagreed about the permissible form of payment for the installment 
payments.  Advanced wanted to provide CBI with a written credit card 
authorization whereby CBI would debit Advanced’s American Express charge 
account when each payment was due.  Because CBI did not want to absorb the 
fees charged by American Express, it refused this manner of payment.
        On 
October 22, 2003, CBI filed its original petition against Advanced in district 
court in Tarrant County, Texas alleging breach of contract stemming from 
Advanced’s failure to make the initial and first monthly installment 
payments.  Two days later, CBI filed an amended petition adding a claim for 
fraudulent inducement in the negotiation and execution of the Settlement 
Agreement.  The amended petition sought, among other things, rescission of 
the Settlement Agreement and unspecified damages for CBI’s losses arising from 
the claims asserted in the Utah litigation.
        There 
was subsequent communication between the parties’ attorneys that will be 
discussed later in this opinion.  Because CBI believed that Advanced’s 
attorney refused to accept service of process on behalf of Advanced, CBI began 
the process of completing service through the Texas Secretary of State who 
mailed the citation and amended petition to Advanced’s President, Christine 
Heathman.  See Tex. Civ. Prac. 
& Rem. Code Ann. §§ 17.044(b); 17.045 (Vernon 1997 & Supp. 
2004-05).  After service of process was completed on November 17, 2003, and 
the appropriate time had expired for Advanced to file an answer, the trial court 
signed a default judgment on December 19, 2003 awarding damages to CBI as 
requested in its amended petition.
        Advanced 
timely filed a motion to set aside the default judgment.  The trial court 
held a hearing on the motion.  No live testimony was presented at the 
hearing, which was not transcribed by a court reporter.[3]  
The trial court’s order denying Advanced’s motion to set aside the default 
judgment contained general language denying the motion but did not include any 
specific explanation for the denial.  The trial court did not make any 
findings of fact or conclusions of law.
STANDARD OF REVIEW
        A 
trial court’s decision to deny a motion to set aside a default judgment is 
reviewable for abuse of discretion.  Old Republic Ins. Co. v. Scott, 
873 S.W.2d 381, 382 (Tex. 1994).  In making this determination, we must 
decide whether the trial court acted without reference to any guiding rules or 
principles; in other words, whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied, 476 U.S. 1159 (1986).
        Merely 
because a trial court may decide a matter within its discretion in a different 
manner than an appellate court would in a similar circumstance does not 
demonstrate that an abuse of discretion has occurred.  Id.  An 
abuse of discretion does not occur where the trial court bases its decisions on 
conflicting evidence.  Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 
1978); see also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).  
Furthermore, an abuse of discretion does not occur as long as some evidence of 
substantive and probative character exists to support the trial court’s 
decision.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 
2002).
        Because 
the trial court did not file findings of fact and conclusions of law, the denial 
of Advanced’s motion to set aside the default judgment must be upheld on any 
legal theory that finds support in the evidence. See Strackbein v. Prewitt, 
671 S.W.2d 37, 38 (Tex. 1984).
CRADDOCK V. SUNSHINE BUS LINES, INC.[4]
        In 
its sole issue on appeal, Advanced contends the trial court abused its 
discretion in denying its motion to set aside the default judgment because 
Advanced met the test of Craddock v. Sunshine Bus Lines, Inc. by 
demonstrating that: 1) its failure to file an answer was a mistake or accident, 
and was not intentional or a result of conscious indifference; 2) the motion set 
up a meritorious defense; and 3) the motion was filed at a time when its 
granting would occasion no delay or otherwise injure CBI.  See Bank One, 
Tx., N.A. v. Moody, 830 S.W.2d 81, 82 (Tex. 1992); Craddock 133 
S.W.2d at 126.
Mistake or 
accident vs. intentional or conscious indifference
        In 
order to meet the first prong of the Craddock test, Advanced had to 
establish that its failure to file an answer was not intentional or the result 
of conscious indifference, but was an accident or mistake.  See Craddock, 
133 S.W.2d at 126.  When applying the Craddock test, the trial court 
looks to the knowledge and acts of the defendant as contained in the record 
before the court.  Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 
80, 82 (Tex. 1992).  When a defendant relies on his agent to file an 
answer, he must demonstrate that both he and his agent were free of conscious 
indifference.  Id. at 83.   “Conscious indifference” 
means “a failure to take some action which would seem indicated to a person of 
reasonable sensibilities under the same circumstances."  Sharpe v. 
Kilcoyne, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.).
        Therefore, 
the issue before the trial court was whether Advanced established that neither 
Advanced nor its counsel exhibited intentional disregard or conscious 
indifference in not timely filing an answer after being served with CBI’s 
first amended petition by the Texas Secretary of State and after receiving 
written and verbal notification of this service from CBI’s counsel.  
Advanced contends that its counsel fully intended to file a timely answer and 
failed to do so only because neither he nor his client had actual notice that 
service had been completed and that an answer was due.
Factual Background
        By 
letter dated October 27, 2003, CBI’s counsel notified Advanced’s counsel 
that CBI had sued Advanced, and attached a file-marked copy of the 
petition.  CBI’s counsel asked whether Advanced’s counsel would accept 
service on behalf of Advanced; shortly thereafter he received a voice message 
from Advanced’s counsel advising that he would not agree to accept 
service.  Accordingly, CBI’s counsel followed the procedures for having 
Advanced served by the Texas Secretary of State.
        Christine 
Heathman, President of Advanced, stated that shortly after November 14 she 
learned from her counsel that the instant lawsuit had been filed.  She and 
her assistant, Monica Villar, an officer of Advanced, “had contact with 
counsel throughout November and early December addressing these issues [form of 
payment under the Utah settlement agreement and a sales dispute].”
        On 
November 17, Villar signed for a certified letter, return receipt requested, 
addressed to Heathman from the “Secretary of State Citations Unit” in 
Austin, Texas; the letter included citation and CBI’s amended petition.
        Heathman’s 
affidavit states that shortly before Thanksgiving (November 27)[5] 
she was out of the office for several days and that between December 1 and 10 
she was in Mexico.  During her absence, mail specifically addressed to her 
at Advanced was received and set aside but in most cases was not opened.  
The letter from the Texas Secretary of State Citations Unit remained on 
Heathman’s desk until she read it on December 11 or 12 upon her return from a 
trip to Mexico.  Heathman stated that when she read the documents she did 
not understand that the letter constituted service of process; she believed the 
documents were merely copies of items that Advanced’s counsel already had in 
his possession.
        CBI’s 
counsel testified via affidavit that after Advanced had been served by the Texas 
Secretary of State, Advanced’s counsel left a voice message saying he was now 
willing to accept service on behalf of Advanced.  CBI’s counsel 
immediately responded by sending a letter via facsimile to Advanced’s counsel 
on November 25 reciting that because Advanced’s counsel would not accept 
service, CBI had to incur the expense of having Advanced served, and “It is my 
understanding that Advanced has been properly served with process in the 
above-referenced matter.  I am, however, attaching the amended petition 
that was served on your client.”
        Advanced’s 
counsel immediately contacted his client to determine if it had in fact been 
served.  Villar informed him that Advanced had not been served.[6]  On December 11, Advanced’s counsel called CBI’s 
counsel to confirm whether service had been completed and to inquire as to the 
date Advanced’s answer would be due.  On December 15, Advanced’s 
counsel received a voice message from CBI’s counsel stating that Advanced’s 
answer had been due the prior Monday, December 8, and asking him to let CBI’s 
counsel know if Advanced “wanted to file something.”  On December 18, 
Advanced’s counsel contacted Texas counsel to represent Advanced in this 
lawsuit.[7]  Advanced’s counsel stated that 
“Throughout this period, I communicated with [CBI’s counsel] several times, 
primarily by exchanging voice-mail messages.  I consistently communicated 
to him that Advanced intended to respond to the petition.”
        CBI’s 
counsel testified in his affidavit that when he heard nothing from Advanced’s 
counsel after leaving him the voice message on December 15, and because no 
answer had been filed nor was there any indication that Advanced would be filing 
an answer, he filed a motion for default judgment on December 18.  CBI’s 
counsel stated he was never told that Advanced intended to file an answer to 
this lawsuit.
        On 
December 19, the trial court signed a default judgment in favor of CBI.  
Advanced’s answer was mailed to the trial court clerk by Texas counsel on 
December 19 and was filed on December 22.
Discussion
        In 
support of its contention that it met the first prong of Craddock, 
Advanced relies primarily upon the Texas Supreme Court case of Estate of 
Pollack v. McMurrey, 858 S.W.2d 388 (Tex. 1993), which Advanced argues 
presents facts nearly identical to those in the case at bar.
        In 
Pollack, the defendant died after filing an answer to the suit.  
Plaintiff’s counsel informed the estate’s counsel that the estate was being 
made a party to the suit; the Texas Secretary of State subsequently attempted 
service upon the two executors by certified mail, return receipt 
requested.  See Tex. Civ. 
Prac. & Rem. Code Ann. §§ 17.044-.045.  The citation to one 
executor was returned unclaimed, and the citation to the other executor was 
signed for by an unidentified person at the executor’s home.  Pollack, 
858 S.W.2d at 390.  When the estate failed to answer, the trial court 
signed a default judgment. In support of its motion for new trial, the estate 
filed affidavits from the executors saying that each was “totally unaware” 
of the litigation until after entry of the default judgment.  Id.
        The 
facts of Pollack differ from those in the case at bar. In Pollack, 
no one knew who signed for one executor’s citation and the other executor had 
never been served; in our case it is undisputed that Monica Villar, an officer 
of Advanced, signed for the citation that was addressed to Christine Heathman as 
President of Advanced.  The executors in Pollack had no knowledge of 
the pendency of the litigation, whereas Heathman testified that “on a date 
shortly after Nov. 14" she had knowledge the instant lawsuit had been filed 
against Advanced.  Further, Heathman testified that on an unstated date in 
December, after December 11 or 12 but before the default judgment was signed, 
she had knowledge through her counsel that CBI contended that Advanced had been 
served and that an answer was due.  Additionally, in Pollack, there 
was no evidence that anyone in the law firm representing the estate was aware 
that the executors had been served.  By contrast, Advanced’s counsel was 
expressly informed by CBI’s counsel in writing on November 25 that it was his 
understanding that Advanced had been properly served with process, and by 
attaching CBI’s amended petition “that was served on your client.”  
CBI’s counsel again informed Advanced’s counsel on December 15 that the 
answer date had passed and requested Advanced’s counsel let CBI’s counsel 
know if Advanced intended to file something in response.  Advanced’s 
counsel did not communicate with CBI’s counsel before the default judgment was 
signed on December 19.
        In 
Pollack, the supreme court held the trial court abused its discretion in 
refusing to set aside the default judgment “without a proper resolution of a 
factual dispute regarding the Estate’s failure to answer.”  Id. 
at 389.  The case was reversed and remanded to the trial court with 
instructions to conduct an evidentiary hearing to determine controverted 
material facts relating to the Estate’s failure to answer. Id.
        This 
differs from the instant case where the trial court held a hearing on 
Advanced’s motion to set aside the default judgment.  Unlike the 
situation in Pollack, our trial court did not deny Advanced’s motion 
without permitting Advanced an opportunity to further develop facts relevant to 
the motion to set aside the default judgment.  Instead of presenting live 
testimony at the hearing, both parties chose to rely upon the affidavits 
submitted in support of the motion and the response, as was certainly their 
prerogative. Because of the significant differences in the facts between Pollack 
and the instant case, we do not find Pollack lends support to 
Advanced’s argument that it proved the first prong of Craddock.
        Having 
thoroughly reviewed the affidavits that were before the trial court at the 
hearing on Advanced’s motion to set aside the default judgment, we hold that a 
person of reasonable sensibilities under the same circumstances would have taken 
action to file an answer to CBI’s amended petition prior to the date the trial 
court signed the default judgment.  See Sharpe, 962 S.W.2d at 
701.  Therefore, we conclude that Advanced did not meet the first prong of 
the Craddock test by establishing that its failure to timely file an 
answer was an accident or mistake and not intentional or the result of conscious 
indifference.
CONCLUSION
        Because 
we have held that Advanced did not meet the first prong of Craddock, we 
need not address whether Advanced presented a meritorious defense or established 
that a new trial would not delay or otherwise injure CBI.  We hold the 
trial court did not abuse its discretion in denying Advanced’s motion to set 
aside the default judgment.  Accordingly, we overrule Advanced’s sole 
issue and affirm the judgment of the trial court.
  
                                                                  PER 
CURIAM
 
 
 
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and WALKER, J.
 
DELIVERED: 
February 10, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Advanced’s counsel is a Utah attorney.  After the instant suit was filed, 
Advanced engaged Texas co-counsel.  However, all references in this opinion 
to “Advanced’s counsel” refer to the Utah attorney, unless otherwise 
indicated.
3.  
Advanced submitted the affidavits of its Utah counsel, its Texas counsel, and 
Christine Heathman. CBI submitted the affidavit of its counsel.
4. 
Craddock v. Sunshine Bus Lines, Inc., 134 Tex 388, 133 S.W.2d 124 (1939)
5.  
See “Calendar for the year 2003 (United States),” <http://timeanddate.com/calendar/index.html?year=2003&country=1>.
6.  
In its appellate brief, Advanced asserts that its counsel “called Advanced 
almost daily once he was informed by CBI that Advanced would be served.  
Despite his calls, Advanced continued to insist that it had not been 
served.”  Because this information is not contained in the affidavit 
filed by Advanced’s counsel and therefore was not before the trial court, it 
is not a part of the appellate record and will not be considered on appeal.
7.  
December 15, 2003 was on Monday; December 18, 2003 was on Thursday.  See 
id.